IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CR-126-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ROBERT EDWARD WHITESIDE, | ) | |
| | ) | |
| Defendant. | ) | |

On January 6, 2021, Robert Edward Whiteside ("Whiteside" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and filed exhibits in support [D.E. 87, 90]. On February 9, 2021, Whiteside, through counsel, filed a memorandum and exhibits in support of his motion for compassionate release [D.E. 92, 95]. On February 23, 2021, the government responded in opposition and filed exhibits in support [D.E. 97, 98]. On March 9, 2021, Whiteside replied [D.E. 100]. As explained below, the court denies Whiteside's motion.

I.

On March 7, 2016, with a written plea agreement, Whiteside pleaded guilty to interstate domestic violence (count two) and structuring monetary transactions to avoid reporting requirement (count four). See [D.E. 42, 49, 50]. On June 10, 2016, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 60–62, 69]. The court calculated Whiteside's total offense level to be 37, his criminal history category to be I, and his advisory guideline range to be 120 months' imprisonment. See [D.E. 62] 1; [D.E. 69] 5–19. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced

Whiteside to 60 months' imprisonment on count two and 60 months' consecutive imprisonment on count four, for a total of 120 months' imprisonment. See [D.E. 61] 3; [D.E. 69] 20–26, 34–40. Whiteside appealed [D.E. 64]. On February 8, 2017, the United States Court of Appeals for the Fourth Circuit enforced the appeallate waiver in Whiteside's plea agreement and dismissed Whiteside's appeal [D.E. 73, 74].

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious

2

medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

   (C) Family Circumstances.—

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, No. 20-7350, 2021 WL 1823289, at *3 (4th Cir. May 7, 2021); United States v. Kibble, No. 20-7009, 2021 WL 1216543, at *3–4 (4th Cir. Apr. 1, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 2021 WL 1216543, at *3–4. Nevertheless, section 1B1.13 provides informative

---

      (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

      (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

  (D)  Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 2021 WL 1823289, at *3; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Whiteside contends that on June 14, 2020, he submitted a compassionate release request to the warden, but never received a response. See [D.E. 87] 10–11; [D.E. 87-15]; [D.E. 90]; [D.E. 95] 4–5; [D.E. 100] 2–3. The government contends that Whiteside has not met section 3582's exhaustion requirement. See [D.E. 97] 1, 3, 15–16; [D.E. 97-1]. The court assumes without deciding that Whiteside has exhausted his administrative remedies. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Whiteside's claim on the merits.

Whiteside seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Whiteside cites the COVID-19 pandemic, his infection with and recovery from COVID-19, his age (52), his family history of heart disease and cancer, and his Crohn's disease, immunodeficiency, sleep apnea, history of lung infections, and being overweight. See [D.E. 87] 2–3,

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

20–21; [D.E. 87-8]; [D.E. 87-14]; [D.E. 87-15] 3–6, 11, 18–43; [D.E. 87-16]; [D.E. 90] 4–8, 14, 21–46; [D.E. 92]; [D.E. 95] 6, 11–18; [D.E. 95-1]; [D.E. 100] 3–5; see also [D.E. 98]. Whiteside also cites the conditions at FCI Fort Dix, his rehabilitation efforts, his release plan, and that he has served over 75% of his sentence. See [D.E. 87] 9, 14–15, 20, 29, 37; [D.E. 87-12]; [D.E. 87-13]; [D.E. 87-15] 7–10, 12–14; [D.E. 87-17]; [D.E. 87-18]; [D.E. 90] 8–13, 15–17; [D.E. 95] 9–11, 22–23; [D.E. 95-2]; [D.E. 95-3] 3; [D.E. 100] 5–6.

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Whiteside states that he suffers from Crohn's disease, immunodeficiency, sleep apnea, a history of lung infections, and is overweight, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Whiteside serves his sentence. The same holds true were Whiteside to contract COVID-19 again. Accordingly, reducing Whiteside's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Whiteside's medical conditions, his rehabilitation efforts, and his release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Whiteside's sentence. See High, 2021 WL 1823289, at *4–7; Kibble, 2021 WL 1216543, at *4–5; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Whiteside is 52 years old and engaged in horrific criminal conduct in June 2014. See PSR ¶¶ 8–13. Whiteside caused the female victim, with whom he had developed a romantic relationship online, to travel from Austria to North Carolina. See id. ¶¶ 8–9. Upon the victim's arrival in the United States, Whiteside forced her to engage in oral and vaginal intercourse. See id. ¶ 9. Whiteside held the victim captive for five days, convincing her that the German Embassy would not help her return home. See id. ¶¶ 9–11, 13. Whiteside admitted to hitting the victim in the head with a glass bottle and strangling her. See id. ¶¶ 10–11. Moreover, after his arrest, Whiteside directed another individual to structure his monetary transactions so as to avoid reporting requirements. See id. ¶¶ 12–13. While incarcerated, Whiteside has received multiple infractions. See [D.E. 97-5]. Nonetheless, Whiteside has a minimal criminal history and has taken some positive steps while incarcerated. See PSR ¶¶ 21–24; [D.E. 87] 15, 20, 37; [D.E. 87-12]; [D.E. 87-15] 12–14; [D.E. 87-17]; [D.E. 87-18]; [D.E. 90] 15–17; [D.E. 95] 22–23; [D.E. 95-2]; [D.E. 100] 5–6.

The court has considered Whiteside's exposure to and recovery from COVID-19, his medical conditions, his rehabilitation efforts, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 2021 WL 1823289, at *4–7; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and to treat Whiteside, the section 3553(a) factors, Whiteside's arguments, the government's persuasive response, Whiteside's misconduct while incarcerated, and the need to punish Whiteside for his horrific criminal behavior, to incapacitate Whiteside, to promote respect for the law, to deter others, and to protect society, the court declines to grant Whiteside's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 2021 WL 1823289, at *4–7; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL

205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Whiteside's request for home confinement, Whiteside seeks relief under the CARES Act. See [D.E. 87, 95]. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). Thus, the court dismisses Whiteside's request for home confinement.

II.

In sum, the court DENIES Whiteside's motion for compassionate release [D.E. 87], and DISMISSES Whiteside's request for home confinement.

SO ORDERED. This 13 day of May 2021.

JAMES C. DEVER III
United States District Judge

8